IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GOOGLE LLC,                                      )
                                                 )
              Plaintiff,                          )
                                                 )
       v.                                         )    C.A. No. _____
                                                 )
FORTRESS INVESTMENT GROUP,                        )
FORTRESS CREDIT CO. LLC, and CF                   )
UNILOC HOLDINGS LLC,                              )
                                                 )
              Defendant.

**MOTION TO COMPEL FORTRESS INVESTMENT GROUP,
FORTRESS CREDIT CO. LLC, AND CF UNILOC HOLDINGS LLC
TO COMPLY WITH SUBPOENAS ON AN EXPEDITED BASIS**

In this ancillary action, Defendant Google LLC ("Google") moves for an order

compelling Fortress Investment Group, Fortress Credit Co. LLC (together, "Fortress"), and CF

Uniloc Holdings LLC ("CF Uniloc") (collectively, the "Subpoenaed Parties"), to comply, on an

expedited basis, with Google's subpoenas seeking documents and testimony in *Uniloc 2017 LLC

v. Google LLC*, Nos. 2:18-cv-00491–504-JRG-RSP and 2:18-cv-00548–553-JRG (E.D. Tex.).[1]

The subpoenas, which are attached hereto as Exhibits 1, 2, and 3, were issued in connection with

the above-cited cases by presiding Judge Rodney James Gilstrap of the United States District

Court for the Eastern District of Texas.  In that court, plaintiff Uniloc 2017 LLC ("Uniloc 2017"

or "plaintiff") has sued Google for alleged patent infringement in approximately 20 separate

cases that are now pending before Judge Gilstrap.  The Subpoenaed Parties are nonparties who

possess information relevant to the parties' claims and defenses, including information relevant

---

[1] Pursuant to D. Del. L.R. 7.1.1, counsel for Google avers that it has made a reasonable effort to reach agreement with counsel for the Subpoenaed Parties on the matters set forth in this Motion, but no agreement could be reached.

to standing and transfer of venue.

Although the subpoenas were issued by the Eastern District of Texas, they require compliance in the District of Delaware ("this Court"), which is where the Subpoenaed Parties were subject to service and, hence, where the subpoenas commanded document production and depositions to occur. Accordingly, pursuant to Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, Google respectfully moves this Court to compel CF Uniloc and Fortress to comply with Google's requests for both deposition testimony and the production of documents, as set forth in the subpoenas.

## I.      BACKGROUND

These cases are still in their early stages. In the Eastern District of Texas, Google has filed motions to dismiss for lack of standing and improper venue, as well as a motion to transfer, both of which remain pending before Judge Gilstrap. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, No. 18-cv-553-JRG, D.I. 21, 26 (E.D. Tex.). These motions are attached as Exhibits 4 and 5. To facilitate the timely resolution of these motions, Judge Gilstrap has ordered that all standing- and venue-related discovery occur on an expedited basis, well before the parties complete all other discovery. (Exs. 6, 7) Under the operative, the deadline to substantially complete document productions is August 19. (Ex. 6.) The deadline for standing- and venue-related depositions is September 13. (*Id.*) And the deadline for moving to compel compliance with standing- and venue-related discovery is August 14. (*Id.*)

The Subpoenaed Parties are putative nonparties that are closely associated with the plaintiff and possess crucial information regarding standing and transfer. Fortress formed and incorporated the plaintiff, as well as CF Uniloc, which appears to be the plaintiff's parent. Further, Fortress is a financier of the plaintiff and holds a security interest in the "Proceeds" of the plaintiff's patent portfolio, which means (given that the plaintiff is a non-practicing entity

whose patents generate proceeds primarily through litigation) that Fortress has held a security interest in numerous lawsuits brought by Uniloc entities.  (Ex. 4 at 6-11.)  As explained in Google's motion to dismiss, Fortress and CF Uniloc may also have proprietary interests in the patents that Uniloc 2017 has asserted against Google.  (*Id.*)  At the heart of this third-party discovery are a number of loan agreements among Uniloc 2017; Uniloc USA Holdings, LLC ("Uniloc USA"); Uniloc Luxembourg SA ("Uniloc Lux"); CF Uniloc; and Fortress Credit Co. LLC that unbundled the property rights to the asserted patents and scattered those rights among the various entities.  (*See, e.g.*, Exs. 8, 9, 10.)  These agreements directly implicate issues of standing and transfer.

These agreements, and likely others that Google is seeking in these subpoenas, demonstrate a complicated web of agreements, whereby the property rights to the asserted patents have shifted alongside Uniloc's changing corporate and capital structure.  For example, even as late as October 2018, Fortress and Uniloc entities were shifting the property rights to the asserted patents.  On October 1, 2018, Uniloc 2017 and Uniloc Licensing USA LLC ("Uniloc Licensing") filed four separate complaints against Google.  Then, between October 31, 2018 and November 1, 2018, Uniloc 2017, Uniloc Licensing, and Uniloc USA filed another 10 separate complaints against Google.  On November 17, 2018, Uniloc dismissed these initial complaints without prejudice, and a different set of Uniloc entities—Uniloc 2017 and Uniloc USA—filed 14 new complaints against Google on the same 14 patents that were asserted in the earlier complaints.  Over the course of just two months, Uniloc shifted the property rights to the asserted patents a number of times, demonstrating that the issue of standing is anything but clear.

Google served its subpoenas on the Subpoenaed Parties on July 19, 2019 in Case Nos. 2:18-cv-491-497, -499-504, and -548, in accordance with the orders requiring that all standing-

and venue-related discovery be served by that date.   (Ex. 6)   The subpoenas served on the Subpoenaed Parties seek document production and depositions.   On July 26, Google served subpoenas on the Subpoenaed Parties in Case Nos. 2:18-cv-550-553.[2][3]

On August 2, the Subpoenaed Parties, all represented by common counsel, served written objections on Google categorically refusing to produce *any* documents or witnesses and making no offers of compromise.   (*See* Exs. 11- 13.)   Their objections are nearly identical across each request for production and deposition topic.   (*See id.*)   Since being served with the objections, Google's counsel has met and conferred twice by telephone with counsel for the Subpoenaed Parties and proposed several compromises.   E-mails documenting the compromises offered by Google are attached as Exhibit 14.   (Declaration of Deepa Acharya ("Acharya Decl.") at ¶ 19.)

On the first meet-and-confer call, Google offered to limit (at least for the moment) the scope of its discovery requests to issues of standing and transfer, even though the Subpoenaed Parties also possess other information relevant to the claims and defenses in this litigation. Counsel for the Subpoenaed Parties declined to make any commitments in complying with the remaining requests and topics set forth in the subpoenas.   (*See* Ex. 14; *see also* Acharya Decl. at ¶ 20.)

On the second meet-and-confer call, counsel for the Subpoenaed Parties represented that

---

[2]   The July 19, 2019 and July 26, 2019 subpoenas are identical except for the identification of case numbers.   They request the same documents and the same deposition testimony. Accordingly, the Subpoenaed Parties served one set of responses and objections for each subpoenaed party.   (*See* Exs. 11-13.)

[3]   The Eastern District of Texas court had initially set forth different schedules regarding standing- and venue-related discovery for Case Nos. 2:18-cv-491-497, -499-504, and -548 and for Case Nos. 2:18-cv-550-553.   The court has since set forth a single schedule in all of these cases.   These schedules are attached as Exhibits 6 and 7.

CF Uniloc does not have responsive material for certain requests and topics.[4]  But he insisted, as a precondition to further discussing the Subpoenaed Parties' willingness to comply with the subpoenas, that Google provide an "analysis" of a recent production by the plaintiff.  (Acharya Decl. at ¶ 21.)  In making this demand, counsel for the Subpoenaed Parties evinced intimate knowledge of the plaintiff's document production, including the date of the production and the approximate number of documents produced.  He again demonstrated his familiarity with the plaintiff's document production in a subsequent e-mail.  (Ex. 14.)

Although it is unclear exactly what "analysis" counsel for the Subpoenaed Parties was demanding, it was clear that the Subpoenaed Parties were looking for ways to delay compliance with the subpoenas.  Nonetheless, in an attempt to understand the specific concerns that the Subpoenaed Parties had espoused in their written objections to the subpoenas, counsel for Google offered to go through each request and topic on the meet-and-confer call so that the parties could meaningfully discuss the specific objections and understand where compromises might be found (Acharya Decl. at ¶ 22), because the objections and responses that the Subpoenaed Parties had served were not specific and do not demonstrate what they were and were not willing to produce.  (Exs. 11-13.)  Counsel for the Subpoenaed Parties refused. (Acharya Decl. at ¶ 22.)

Following the second meet-and-confer, counsel for the Subpoenaed Parties emailed Google's counsel and indicated that the Subpoenaed Parties would produce a transcript from Mr. Erez Levy, a corporate designee for Uniloc USA and Unilox Lux from the *Uniloc v. Apple*

---

[4] Counsel for the Subpoenaed Parties represented that CF Uniloc did not have any responsive documents or information for Request for Productions Nos. 22–28 and 34 and corresponding Topics 19–27 and 30.  Accordingly, Google is willing to drop these Requests and Topics with respect to the CF Uniloc subpoena.

litigation in the Northern District of California (Case No. 3:18-cv-00360-WHA), where some of the same issues related to standing are being litigated. (Ex. 14.) That evening, the Subpoenaed Parties produced Mr. Levy's transcript, exhibits to that transcript, and Apple's 30(b)(6) notice to Uniloc USA and Uniloc Lux from the *Uniloc v. Apple* case. (Acharya Decl. at ¶ 23.) Following this production, Counsel for Google e-mailed counsel for the Subpoenaed Parties and further narrowed the document requests and deposition topics on which it seeks information from the Subpoenaed Parties. (Ex. 14.)

After having met and conferred on the subpoenas twice, the Subpoenaed Parties have still provided no indication when, if ever, they will comply with the remaining document requests and deposition topics set forth in the subpoenas. Google, therefore, respectfully moves this Court to compel the Subpoenaed Parties to produce the documents and appear for the depositions as set forth in the subpoenas. Google does so on an expedited basis in order to comply with the deadlines set by Judge Gilstrap's scheduling order on standing- and venue-related discovery. (Exs. 6, 7.)

## II.   LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows a party to issue a subpoena to command a non-party to produce documents or tangible things in its possession, custody, or control. Fed. R. Civ. P. 45. The scope of discovery through a subpoena is the same as under Rules 26 and 34 of the Federal Rules of Civil Procedure. *See* 9A Charles Alan Wright et al., Federal Practice and Procedure § 2452 (3d ed. 2019) (citing cases). A party may obtain discovery of any non-privileged matter that is relevant to any claims or defenses. Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999); *see also Edward D. Ioli Trust v. Avigilon Corp.*, No. 2:10-CV-605-JRG, 2012 WL 5830711, at *1 (E.D. Tex. Nov. 16, 2012) (explaining that the

rules of discovery receive "broad and liberal application").

Rule 26 limits discovery where the burden of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(iii). Moreover, "[c]ourts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery." *Kone Corp. v. ThyssenKrupp USA, Inc.*, C.A. No. 11-465-LPS-CJB, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011); *see also Samuel, Son & Co. v. Beach*, C.A. No. 13-128, 2013 WL 4855325, at *3 n.1 (W.D. Pa. Sept. 11, 2013) ("[T]he recent trend among district courts in the Third Circuit favors application of a good cause or reasonableness standard to resolve motions for expedited discovery . . . .") (internal quotation marks omitted). A non-party commanded to produce documents and tangible things may serve objections to the subpoena. Fed. R. Civ. P. 45(d)(2)(B). The objection must be served within 14 days after service of the subpoena, or before the time of compliance, whichever is earlier. *Id.*

Rule 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The proper venue in which to file a motion to compel a non-party to comply with a subpoena is "the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(1). Because the subpoenas at issue here require the Subpoenaed Parties to produce documents and attend depositions in Delaware, venue is proper in this Court.

## III.   ARGUMENT

To narrow the issues before the Court, at this time, Google limits the scope of this Motion to requests seeking information related to issues of standing and transfer. The requests at issue here are highlighted in the attached Exhibits 1, 2, and 3. These requests are all highly relevant to

the issues of standing and transfer, and cannot be obtained from other sources, including Uniloc 2017.  Google limited the scope of its Motion in light of the August 14 deadline to file motions to compel based on unresolved discovery requests related to these issues.  (Ex. 7.)

For discovery requests related to issues outside the scope of this Motion, Google is willing to address those issues with the Subpoenaed Parties during the normal course of discovery in the above-identified cases, thereby lessening the burden on the Subpoenaed Parties to search for and produce documents on the accelerated schedule for standing- and venue-related discovery.  Google reserves its right to file motions to compel compliance with discovery requests regarding such additional issues if future negotiations with the Subpoenaed Parties are unsuccessful.

In determining the propriety of a subpoena, a court balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the non-party.  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986).  Google will address these factors in turn.

## A.  The Requested Discovery Is Relevant To The Dispositive Issue Of Standing As Well As Transfer

Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "Where there is doubt over relevance, [Rule 26(b)(1)] indicates that the court should be permissive."  *Heat & Control*, 785 F.2d at 1024.  "[W]hen the material sought is minimally relevant the burden is on the party opposing discovery to show that it is not relevant."  8 Charles Alan Wright et al., Federal Practice and Procedure § 2008 (3d ed. 2019) (citing cases).

The loan agreements described above are highly relevant to the plaintiff's standing

because they have unbundled the property rights associated with the asserted patents, creating concurrent ownership of different rights and, in some cases, concurrent ownership of the very same rights. (Ex. 4 at 6-11.) Because Fortress is a signatory to these agreements, the circumstances surrounding *its* reasons for entering into such agreements—distinct from the reasons of the Uniloc entities—are highly relevant for, among other purposes, determining what rights to the patents are held by whom. Documents and information related to these agreements are responsive to at least the Fortress Requests for Production[5] ("RFPs") 1 and 24 and Deposition Topic 1 and CF Uniloc RFPs 1 and 31 and Deposition Topic 1. Similarly, any documents or information related to similar agreements about this litigation or the asserted patents between Fortress entities themselves or between Fortress and Uniloc entities are also highly relevant for the same reasons and responsive to at least Fortress RFPs 2, 5, 6, 7, and 15 and Deposition Topics 2, 5, 6, 11, and 15 and CF Uniloc RFPs 2, 3, 10, and 11 and Deposition Topics 3, 9, and 10.

In particular, Fortress entered into loan agreements with Uniloc Lux and Uniloc USA in December 2014 to finance the patent-assertion activities of various Uniloc entities. (Ex. 4 at 6; Exs. 8-10.) The loan agreements gave Fortress an irrevocable patent license that included the right to grant sublicenses that would automatically revert to Fortress upon the occurrence of certain events, including any event of default. (Ex. 4 at 6-11.) Public documents show that defaults in fact occurred. (*Id.* at 8-9.) As explained in Google's motion to dismiss, these defaults have stripped Uniloc 2017 of standing to pursue this litigation. (*See id.* at 6-11.) In

---

[5] The document requests and deposition topics set forth in the subpoenas to Fortress Credit Co., LLC and Fortress Investment Group are identical, and therefore, we reference these subpoenas together. It is not clear which entity has possession, custody, and control of the relevant documents.

response, plaintiff has disputed these statements and has provided declarations from Fortress in support of its position. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-553 ("-553 Case"), D.I. 33-8, 33-9 (E.D. Tex.). Accordingly, documents and information in Fortress or CF Uniloc's possession, custody, or control are responsive to at least Fortress RFPs 20 and 21 and Deposition Topics 19 and 20 and CF Uniloc RFP 19 and Deposition Topic 18, respectively.

Fortress's decisions to form and incorporate Uniloc 2017 LLC and CF Uniloc and to invest in these entities are highly relevant to determining whether Uniloc 2017 has standing and whether witnesses and documents related to that decision are located in California for transfer purposes. This information is responsive to at least Fortress RFP 23 and Deposition Topic 22. Moreover, Fortress has directly inserted itself into this dispute by providing declarations from Fortress's managing director in the Intellectual Property Finance Group regarding the defaults that Google identified in its motion to dismiss, which is directly responsive to Fortress RFP 20 and Deposition Topic 19. *See, e.g.*, -553 Case, Dkts. 33-8, 33-9. Uniloc 2017's reliance on these declarations to oppose Google's motion to dismiss has made Fortress directly relevant to Uniloc's claims of standing and confirmed that Fortress possesses relevant, discoverable information.

As for CF Uniloc, it is part of the network of affiliated entities that work together to finance and prosecute Uniloc's patent litigations, and agreements between CF Uniloc and Uniloc 2017 suggest that it might possess a proprietary interest in the asserted patents. (Ex. 16.) Whether every entity with rights to the patents-in-suit has been named as a plaintiff in this litigation, as is necessary for any of the plaintiffs to have standing, can be ascertained only by examining the agreements that govern ownership of the asserted patents.

The relationships among the myriad Uniloc and Fortress entities are also relevant to

Google's motion to transfer venue (Ex. 5).  A key consideration for transfer is where witnesses and evidence are located.  *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) (explaining that the location of "witnesses and evidence potentially at issue in the case" is a "clear, legitimate basis for seeking transfer" of venue); *see also Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).  Google believes that the cases should be transferred to the Northern District of California from the Eastern District of Texas because the parties, third-party witnesses, and the bulk of the evidence likely to be presented in these cases, are all mainly located in the Northern District of California.

Fortress has offices in the Northern District of California.  Indeed, the vast majority of the potential Fortress witnesses that Google has identified thus far not only reside in the Northern District of California, but also were involved in the negotiations among Fortress, Uniloc 2017, and other related Uniloc entities.  (Ex. 5 at 5-7.)  Google's subpoenas, therefore, seek additional documents and information about the location of Fortress's and CF Uniloc's witnesses and documents in furtherance of Google's request to transfer venue, with the expectation that this information will establish that the Northern District of California is a more convenient forum for these critical third parties.  Fortress's and CF Uniloc's organizational structures and investors are highly relevant for the same reasons and responsive to at least Fortress RFPs 9, 10, 27, 28, 29, and 30 and Deposition Topics 8, 23, 24, 25, and 26 and CF Uniloc RFPs 5 and 6 and Deposition Topics 5 and 6.

Similarly, Mr. Craig Etchegoyen, the former CEO of Uniloc Lux, current member of Uniloc 2017, and signatory to the relevant agreements exchanging rights in the asserted patents, has employment agreements with Fortress and other Uniloc entities that are highly relevant for standing and transfer.  For example, Mr. Etchogoyen's employment agreements may suggest that

a location or office in which he primarily works or maintains relevant documents is in the Northern District of California. They may also relate to the control of Uniloc 2017 and thus impact standing. This information is responsive to Fortress RFP 8 and Deposition Topic 7 and CF Uniloc RFP 4 and Deposition Topic 4.

Information related to Fortress's meetings with Uniloc executives, including the duration, frequency, and location of those meetings, is also important to establish that California, including the Northern District of California, is a more convenient forum for third parties and is responsive to at least Fortress RFP 14 and Deposition Topic 12. Finally, the location of CF Uniloc's registered agent for service of process, and CF Uniloc's decision to register or not register to operate as a business in either California or Texas, are highly relevant for the venue transfer analysis in determining which jurisdiction is more convenient and is responsive to at least CF Uniloc RFPs 20, 21, 29, and 30 and Deposition Topics 28 and 29.

## B. Google Needs Documents And Testimony From The Subpoenaed Parties Because It Cannot Obtain The Relevant Information Elsewhere

The second factor considered in determining the propriety of a subpoena is "the requesting party's need" for the material being sought. *Heat & Control*, 785 F.2d at 1024. This factor favors the enforcement of a subpoena when the information being sought is in the exclusive possession of the subpoenaed party. *See, e.g.*, *In re Subpoena to Non-Party OPI Products, Inc. Mycone Dental Supply Co v. Creative Nail Design, Inc.*, No. 3:12-CV-747-RS, 2014 WL 12610196, at *2 (C.D. Cal. Jan. 2, 2014) (concluding that the requesting party "needs to get the information from OPI because OPI is the only entity that has access to it"). Put differently, "[n]eed is enhanced when information is uniquely available from the party from whom it is sought." *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987).

Publicly available documents offer glimpses into the relationships among the Fortress

and Uniloc entities, but they do not provide the full picture.  Google has exhausted the publicly available information about the loan agreements and other formal relationships among the Fortress and Uniloc entities that might affect Uniloc 2017's rights to the asserted patents.  If the Subpoenaed Parties are permitted to ignore the subpoenas entirely, Google will be unfairly prejudiced in its ability to discover additional information relevant to its defenses on standing and transfer.

The main objection from the Subpoenaed Parties is that Google should seek this information from Uniloc 2017, a party to the litigation.  Although Google has served discovery on Uniloc 2017 seeking information about the relationships between it and Fortress, any documents and information received from Uniloc 2017 in response to that subpoena would (assuming that the relevant transactions occurred at arm's length, which is itself an open question that the subpoenas are intended to help answer) tell only half the story.  The other half of the story, which relates to Fortress, would be exclusively in Fortress's possession.  Uniloc 2017 claims not to be privy, for example, to internal Fortress documents and communications evaluating whether to invest in Uniloc 2017 or its affiliates, and has objected to a number Google's document requests that explicitly relate to Fortress on the grounds that these requests seek third-party information.  (*See, e.g.*, Ex. 15 at pp. 2-4, 8-9, 13-15 (Uniloc 2017's objections and responses to RFPs 1, 2, 6, 19, 33, 34, and 36).)  Further, Uniloc 2017 would not possess any documents or information reflecting Fortress's understanding of what events under the loan agreements would trigger the automatic reversion of its right to grant sublicenses.

Fortress may also be in sole possession, custody, or control of highly relevant documents and information related to at least two of the promissory notes between Uniloc 2017 and CF Uniloc, both of which were formed and incorporated by Fortress.  The Subpoenaed Parties did

not explain why Uniloc 2017 would have organizational charts of Fortress or CF Uniloc, or Mr. Etchegoyen's employment agreements with Fortress or any other Uniloc entities, in its possession, custody, or control.  In fact, Uniloc 2017 has objected to requests from Google that seek the corporate structure of the Uniloc and Fortress entities on the grounds that these requests seek third-party information. (Ex. 15 at 2-3 (Uniloc 2017's objections and responses to RFPs 3-4).)  Any responsive documents and communications created by the Fortress employees residing in the Northern District of California related to Fortress's negotiations with Uniloc 2017 and related Uniloc entities would be in Fortress's possession, custody, or control, not Uniloc 2017's. Thus, Google's transfer- and standing-related requests and topics are narrowly tailored for documents and information that are in either CF Uniloc's or Fortress's, but not Uniloc 2017's, possession, custody, or control.

The objection of the Subpoenaed Parties that Google can obtain the information it needs directly from Uniloc 2017, a party to the litigation, is conclusory and unsupported by any evidence.  It assumes, without explanation, that Uniloc 2017 has custody and control of all the information that Google seeks from the Subpoenaed Parties, even though numerous requests for production directed to Fortress make no reference to Uniloc whatsoever.  (*See* Ex. 1 at 8–11 (requests 8, 10, 12, 16–19, 22); Ex. 2 at 8–11 (requests 8, 10, 12, 16–19, 22).)  Whether this assumption is true, of course, cannot be ascertained without substantive, good-faith responses to the subpoenas.

During the second meet-and-confer call, the Subpoenaed Parties attempted to use their status as "third parties" to resist discovery, yet they did so only by leveraging insider information about Uniloc 2017's discovery strategy—knowing that Uniloc 2017 had made a document production, the size of that production, and the date on which the documents were produced to

Google—making clear that they are third parties in name only.  On one hand, the Subpoenaed Parties are attempting to resist discovery by claiming that the document requests and deposition topics in Google's subpoenas are overbroad and not proportional to the discovery normally permitted to be served on third parties (despite Google's repeated offers to discuss how to more narrowly tailor the requests and deposition topics).  But on the other hand, the Subpoenaed Parties' attempt to leverage insider information about Uniloc 2017's recent document production to delay compliance with the subpoenas makes clear that they are standing shoulder to shoulder with Uniloc 2017 and coordinating with it in responding to Google's subpoenas.  The demand by the Subpoenaed Parties that Google provide them with its "analysis" of Uniloc 2017's production is highly irregular, particularly where, as here, such information is subject to a protective order.  And the apparent collaboration between the Subpoenaed Parties and Uniloc 2017 in response to Google's subpoenas only underscores the need for Google to discover information on the relationships among these entities.

The information currently known to Google, although pointing to obvious defects in standing and venue, also suggests that additional, relevant information on these issues exists. Google is entitled to discover information regarding all of the loan agreements (including those not currently known to Google) and the corporate structure of the Uniloc and Fortress entities— in short, to follow the crumbs of evidence where they lead.  Google has no means to obtain this information except from the Subpoenaed Parties themselves.  This alone is sufficient to establish Google's need.  *See Heat & Control*, 785 F.3d at 1024–25 (holding that the "need" factor was met where the party objecting to the subpoena offered no "specific evidence" that the information being sought was "available from other sources").

### C.  There Are No Credible Claims Of Hardship Here, And Google Is Prepared To Be Flexible To Minimize Inconvenience

The last factor considered in determining the propriety of a subpoena is "the potential hardship of the party subject to the subpoena." *Heat & Control*, 785 F.2d at 1024.  Material that is kept "in the ordinary course of business" normally "would not be overly burdensome . . . to compile and produce." *Creative Nail Design*, 2014 WL 12610196, at *2.  A party resisting discovery must do more than make "barebones claims of hardship"; such claims "are inadequate." *DetCard Sys., Inc. v. PacsGear, Inc.*, 2011 WL 2491515, at *2 (D. Minn. Apr. 25, 2011).

The Subpoenaed Parties, all represented by common counsel, are stonewalling.  In their objections to Google's subpoenas, the Subpoenaed Parties make only generic, exaggerated claims of the hardship they would face in complying with Google's discovery requests, and they make no effort to identify with particularity why such hardship would arise or what it would entail.  (Exs. 11-13)  They make only "barebones claims" on this issue.  *See id.*; *Plant Genetic Sys., N.V. v. Northrup King Co., Inc.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (concluding that a third party would "not be unduly burdened by compliance with the . . . subpoenas" where it had "done little more than make the bar assertion that it is burdensome for it to comply").  All of the information available to Google, moreover, suggests that complying with its discovery requests would entail no genuine hardship.

For one thing, the same counsel who represents all of the Subpoenaed Parties also currently represents Uniloc entities, including Uniloc 2017, in litigation in California, including in cases asserting some of the same patents.  *See, e.g.*, *Uniloc 2017 LLC v. Microsoft Corporation*, No. 8:19-cv-00781 (C.D. Cal.); *Uniloc 2017 LLC v. Roku, Inc.*, No. 8:19-cv-00295 (C.D. Cal.); *Uniloc 2017, LLC v. Microsoft Corporation*, No. 8:19-cv-00196 (C.D. Cal.); *Uniloc*

16

*2017 LLC v. Microsoft Corporation*, No. 8:18-cv-02053 (C.D. Cal.); *Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055 (C.D. Cal.); *Uniloc 2017 LLC v. Am. Broadcasting Companies, Inc.*, No. 8:18-cv-02056 (C.D. Cal.); *Uniloc 2017 LLC v. ESPN, Inc.*, No. 8:18-cv-02057 (C.D. Cal.); *Cisco Sys., Inc. v. Uniloc USA, Inc.*, No. 3:18-cv-04991 (N.D. Cal.).   The fact that Fortress has provided Uniloc 2017 with declarations supporting Uniloc 2017's positions that it has standing in this lawsuit shows the hand-in-glove relationship between these entities and undermines any suggestion that Fortress would suffer hardship in responding to Google's discovery requests. After all, by providing declarations to Uniloc 2017, Fortress has already responded to requests for documents and testimony from that party.

Moreover, Google is prepared to accommodate the Subpoenaed Parties regarding the means of compliance with the subpoenas.   Google has significantly narrowed the document requests and deposition topics on which it seeks information from the Subpoenaed Parties.  (Ex. 14.) Furthermore, if Uniloc 2017 confirms that it has possession, custody, and control over documents in the possession, custody, and control of other Uniloc entities, including CF Uniloc, Google will withdraw the document requests directed to CF Uniloc.  (*Id.*)  However, counsel for the Subpoenaed Parties has failed to identify any specific requests or topics on which it needs further clarification or narrowing.  Without an explanation of what the Subpoenaed Parties can and cannot produce as the remaining document requests and deposition topics, Google does not know what information or accommodation the Subpoenaed Parties need to comply with the subpoenas.  The unsupported, generic claims of hardship contained in their objections fall flat.

## IV.    CONCLUSION

For all of these reasons, Google respectfully moves the Court to compel the Subpoenaed Parties to produce the documents and appear for the depositions requested by the subpoenas, as limited herein, on an expedited basis so that this discovery can be completed in compliance with

Judge Gilstrap's scheduling order for standing- and venue-related discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

Charles K. Verhoeven
David A. Perlson
David Doak
Jonathan Tse
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

*Attorneys for Google LLC*

Deepa Acharya
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel : 202-538-8000
Fax : 202-538-8100

August 14, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 14, 2019, upon the following at the email addresses indicated below:

M. Elizabeth Day                                          *VIA ELECTRONIC MAIL*
Feinberg Day Kramer Alberti Lim Tonkovich &
Belloli LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel: 650 618-4360
Fax: 650 618-4368
eday@feinday.com

Marc Belloli                                                  *VIA ELECTRONIC MAIL*
Feinberg Day Kramer Alberti Lim Tonkovich &
Belloli LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel: 650 618-4360
Fax: 650 618-4368
mbelloli@feinday.com

Jeremiah A. Armstrong                                *VIA ELECTRONIC MAIL*
Feinberg Day Kramer Alberti Lim Tonkovich &
Belloli LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel: 650 618-4360
Fax: 650 618-4368
jarmstrong@feinday.com

Brett Aaron Mangrum                                      *VIA ELECTRONIC MAIL*
Etheridge Law Group, PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
469-401-2659
Email: brett@etheridgelaw.com

Jeffrey Huang                                           *VIA ELECTRONIC MAIL*
Etheridge Law Group, PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
408-797-9059
Fax: 817-887-5950
Email: jeff@etheridgelaw.com

Ryan Scott Loveless                                     *VIA ELECTRONIC MAIL*
Etheridge Law Group, PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
972-292-8303
Fax: 817-887-5950
Email: ryan@etheridgelaw.com

Travis Lee Richins                                      *VIA ELECTRONIC MAIL*
Etheridge Law Group, PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
214-601-0678
Fax: 817-887-5950
Email: travis@etheridgelaw.com

James L Etheridge                                       *VIA ELECTRONIC MAIL*
Etheridge Law Group, PLLC
2600 East Southlake Blvd
Suite 120-324
Southlake, TX 76092
817/470-7249
Fax: 817/887-5950
Email: jim@etheridgelaw.com

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)